UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ELIO RODRIGUEZ MENDEZ | CIVIL ACTION NO. 26-2734 |
| | SECTION P |
| VS. | |
| | JUDGE S. MAURICE HICKS, JR. |
| TODD BLANCHE, ET AL. | MAG. JUDGE CAROL B. WHITEHURST |

## REPORT AND RECOMMENDATION

Petitioner Elio Rodriguez Mendez,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 11]. For reasons that follow, the Court should deny this petition.

## Background

Petitioner is a citizen of Cuba. He entered the United States of America on October 15, 2010. [doc. # 1-2, p. 3]. DHS released him on parole. [doc. # 11, p. 1].

---

[1] Petitioner's "A Number" is 200-942-728.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

"His status was adjusted to that of a lawful permanent resident on December 20, 2014, under Section 1 of the Cuban Adjustment Act of 1966." [doc. # 11, p. 1]. "On September 7, 2018, he was convicted in the U.S. District Court for the Northern District of North Carolina for the offense of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349." *Id.*

"On October 1, 2019, Petitioner was served with an NTA and placed into removal proceedings. Following the completion of his prison sentence, Petitioner was turned over to ERO custody on January 10, 2020." [doc. # 11, p. 2]. On January 15, 2020, an immigration judge ordered Petitioner removed to Cuba. [doc. # 11-1, p. 10]. Both parties waived appeal. *Id.*

" On January 17, 2020, ERO received correspondence from the U.S. Embassy Havana that Cuba declined to accept Petitioner for removal. On February 12, 2020, Petitioner was served with Warning for Failure to Depart (I-229(a)), along with Instruction Sheet to Detainee Regarding Requirement to Assist in Removal. On March 27, 2020, ERO completed its 90-day post order custody review. On April 2, 2020, ERO submitted a Request for Acceptance of Alien to the Consulate General of Spain in New York, based on Petitioner's claim to have lived previously in Spain. On April 3, 2020, Spain declined to accept Petitioner for removal. On April 8, 2020, Petitioner was released from ICE custody on an Order of Supervision (Form I-220B ). On August 16, 2024, Petitioner was arrested for Burglary, Theft of a motor vehicle,

and drugs Simple Possession fentanyl. Petitioner pled guilty to Theft of Property." [doc. # 11, pp. 2-3]. ICE re-detained Petitioner on July 5, 2026. [doc. # 1, p. 4].

Petitioner filed this proceeding on approximately July 27, 2026. He claims that ICE has detained him for a prolonged period and is not likely to remove him in the near future. [doc. # 1, p. 6]. He maintains that he has provided ICE all of his information, including his fingerprints. [doc. # 1-2, p. 3]. He states: "Cuba does not accept deportees back to their country. Cuba doesn't have diplomatic relations with the U.S. Cuba doesn't issue travel documents. Cuba doesn't cooperate with ICE's removal efforts[.]" *Id.* at 4.

Petitioner also claims that the Government is violating his right to procedural due process by not affording him a bond hearing. [doc. # 1, p. 6]. Respondents opposed the petition on September 23, 2026. [doc. # 11].

## <u>Law and Analysis</u>

### I. *Zadvydas v. Davis*

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the

removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Here, Petitioner fails to meet his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Respondents present the declaration of Supervisory Detention and Deportation Officer Patrick Arbuco, who declares in part:

14) On January 17. 2020. ERO received correspondence from the U.S. Embassy Havana that Cuba declined to accept Petitioner for removal.

15) On February 12. 2020. Petitioner was served with Warning for Failure to Depart (I-229(a)). along with Instruction Sheet to Detainee Regarding Requirement to Assist in Removal.

16) On March 27. 2020. ERO completed its 90-day post order custody review.

17) On April 2. 2020. ERO submitted a Request for Acceptance of Alien to the Consulate General of Spain in New York. based on Petitioner's claim to have lived previously in Spain.

18) On April 3. 2020. Spain declined to accept Petitioner for removal.

19) On April 8. 2020. Petitioner was released from ICE custody on an Order of Supervision (Form I-220B).

20) On August 16. 2024. Petitioner was arrested for Burglary. Theft of a motor vehicle. and drugs Simple Possession fentanyl. Petitioner pled guilty to Theft of Property.

21) On July 5. 2026. following his release from local county jail on criminal charges. Petitioner was re-apprehended and placed into ICE custody.

22) On July 14. 2026. Petitioner was served with Notification of Third Country Removal (TCR). notifying the Petitioner of TCR to Mexico. Petitioner refused to comply with signing the document. Petitioner was placed in Failure to Comply status.

23) On July 15. 2026. Petitioner was served with Warning for Failure to Depart (I-229(a)).

24) On September 1, 2026, Petitioner was served with a Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g). Petitioner refused to sign the document.

25) INA § 241(b)(2)(E) authorizes the DHS to remove aliens subject to final orders of removal to alternative countries, including another country whose government will accept the alien.

26) ICE intended to remove Petitioner to Mexico pursuant to INA § 241(b)(2)(E). However, in order to make a formal request for the Mexico government to accept the alien after they have failed to comply previously, the alien must first sign a Notification of TCR. Petitioner has thus far refused to sign the Notification, preventing ICE from proceeding with his removal from the United States.

27) Upon signing the Notice of TCR, Petitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes TCRs to Mexico.

28) The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of Petitioner's upcoming removal to Mexico.

29) Following INM's final acceptance, the Petitioner will immediately be transported to the U.S. Customs and Border Patrol (CBP) corresponding port of entry for removal to Mexico.

30) Each ICE field office along the southwest border that processes TCRs to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to multiple times a week.

31) Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future, the obstacle to the Petitioner's removal being his failure to sign the notice of TCR.

32) ICE will follow proper procedures for TCR for Petitioner, as set forth in the *Guidance Regarding Third Country Removals*, issued by the DHS Secretary on March 30, 2025."

[doc. # 11-1, p. 4].

Petitioner does not dispute the above declarations. He has not cooperated in efforts to remove him. As above, on July 14, 2026, Petitioner refused to sign a Notification of Third Country Removal (TRC) to Mexico. [doc. # 11-1, p. 5]. Respondents explain that "in order to make a formal request for the Mexico government to accept the alien after they have failed to comply previously, the alien

must first sign a Notification of TCR." *Id.* at 6. As above, "Petitioner has thus far refused to sign the Notification, preventing ICE from proceeding with his removal from the United States." *Id.* According to Officer Arbuco, "the obstacle to the Petitioner's removal [is] his failure to sign the notice of TCR." *Id.*

Petitioner, not ICE, has prolonged his detention and diminished his likelihood of removal by thwarting his removal. *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.") (cited with approval by *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (denying a petition where the petitioner failed to cooperate with efforts to remove him)).[4]

There is no indication that Petitioner is now cooperating or intends to cooperate with removal efforts. Petitioner therefore fails to establish that there is no significant likelihood of removal in the reasonably foreseeable future. *See Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (opining, where the petitioner impeded his removal, that the district court did not err in determining that the petitioner failed to show that there was no significant likelihood of his removal

[4] *See also Lusanga v. Ramos*, 2019 WL 2851759, at *2 (W.D. La. 2019) ("An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.").

in the reasonably foreseeable future if he cooperated).[5] The Government is actively attempting to remove Petitioner, and Petitioner provides no indication that it will not succeed if he begins cooperating.

Accordingly, Petitioner's detention remains reasonable. He may re-file his claim/petition if he develops good reason to believe, in light of any changes in circumstance or new evidence—beginning with his full cooperation with efforts to remove him—that his removal is not significantly likely in the reasonably foreseeable future. *See, e.g., Adefemi v. Gonzales*, 228 F. App'x 415, 416-17 (5th Cir. 2007).[6]

---

[5] *See also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("In contrast to the petitioner in *Zadvydas,* who could not be removed because the receiving countries refused to accept him, Oladokun's non-cooperation is the only barrier to his removal. The Department could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885 (11th Cir. 2015) (reasoning, where the detainee refused to board a plane, that the petitioner could not meet his burden and that there was a significant likelihood that he would be removed "as soon as he cease[d] obstructing the government's efforts to remove him."); *Iwuoha v. Viator*, 2014 WL 4678860, at *3 (W.D. La. Sept. 19, 2014) ("[I]t is clear that Nigeria is willing to accept Petitioner—travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened."); *Sam-Kabba v. Napolitano*, 2013 WL 5960670, at *1 (W.D. La. Nov. 6, 2013).

[6] Of note, Under 8 U.S.C. § 1231(a)(1)(C), "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Applying Section 1231(a)(1), the Fifth Circuit Court of Appeals reasoned in two unpublished opinions

**II. Procedural Due Process**

Petitioner claims that the Government is violating his right to procedural due process by not affording him a bond hearing. When Petitioner "became subject to an administratively final removal order," "authority for his detention then shifted to 8 U.S.C. Section 1231." *Vetcher v. Barr*, 809 F. App'x 254, 256 (5th Cir. 2020). Under Section 1231, the Government is authorized to detain "noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). "During the removal period"—i.e., after "an alien is ordered removed"—"detention is mandatory" for ninety days. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)). Following the ninety-day mandatory detention period, "An alien ordered removed who is inadmissible under section 1182 . . . may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).

---

that when a detainee fails to cooperate with efforts to remove him, the "removal period" under Section 1231(a)(1)(A), is effectively tolled. *Hook*, 639 F. App'x at 230 (unpub.); *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpub.). Here, the undersigned need not determine if Petitioner's actions tolled the statutory removal period in Section 1231(a)(1)(A) because, regardless, he is not entitled to relief under *Zadvydas*. That said, it is worth noting that Section 1231(a)(1)(C), "evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him." *Lema v. I.N.S.,* 214 F. Supp. 2d 1116 (W.D. Wash. 2002). Otherwise stated, Congress plainly declined to fault the government for failing to remove a detainee by a deadline when the detainee fails to cooperate in effecting his removal.

Section 1231(a)(6), "does not" require "the Government to offer detained noncitizens bond hearings after six months of detention . . . ." *Johnson*, 596 U.S. at 575; *see Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) ("§ 1231, unlike § 1226, does not entitle an alien to a bond hearing before an IJ."). Further, with respect to due process, *Zadvydas* addressed the extent to which due process demands relief in the § 1231(a) setting, concluding that relief is required only when continued detention is unreasonable.

Consequently, the Government is not violating Petitioner's right to procedural due process. *See Hernandez-Esquivel v. Castro*, 2018 WL 3097029, at *8-9 (W.D. Tex. June 22, 2018); *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020) ("The Supreme Court has had occasion to consider the constitutional implications of indefinite detention under § 1231(a). . . . [T]he Court offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard we applied in this case. We see no cause to question the wisdom of that decision."); *Castaneda*, 95 F. 4th at 760 ("[A] § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation.").[7]

[7] *See also Linares v. Collins*, 2025 WL 2726549, at *5 (W.D. Tex. Aug. 12, 2025), *report and recommendation adopted,* 2025 WL 2726067 (W.D. Tex. Sept. 24, 2025) ("[T]he Supreme Court [in *Zadvydas*] set out the standard for when detention pursuant to § 1231(a)(6) violates due process: when there is no significant likelihood of removal in the reasonably foreseeable future. Use of this standard is also consistent with the practice of other district courts in the Fifth Circuit.") (citing cases).

The Court should dismiss this claim.

## Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Elio Rodriguez Mendez's petition be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 9th day of October, 2026.

Carol B. Whitehurst
United States Magistrate Judge